## UNITED CIGAR STORES COMPANY *v.* McKENZIE; *et vice versa.*

1. A lease contract provided that the lessee should pay the lessor for a certain storeroom and basement the yearly rent of $4,800 in equal monthly $400 payments in advance on the first day of each month during the term of five years. It was also provided that the lessor "allows a rebate of $100.00 per month for the first year under this contract, same to cover such improvements or to be otherwise applied as lessee may desire, and same is to be deducted from the monthly rental." The lessee paid $300 per month for the first twelve months, but refused to pay the $100 per month, or $1,200 for the year, or to make any "improvements" upon the leased premises amounting to $100 per month, or $1,200 per year. The lessor brought suit, at the expiration of the first twelve months, against the lessee for the $1,200 not paid by the latter, and also asked for an accounting. A demurrer to the petition was filed, on the ground, among others, that the plaintiff could not recover, because the lessee under the contract had the right to an unconditional reduction of the rental, during the first twelve

months, of $100 per month, without reference to any "improvements" made on the leased premises by the lessee. *Held*, that the court did not err in overruling the demurrer.

(*a*) The contract is ambiguous with reference to allowing a rebate of $100 per month for the first year; and it is a question for the jury to say, under competent evidence, what the intention of the parties to the contract was.

2. The court did not err in other rulings made on demurrer, as set out in the second division of the opinion.

JULY 18, 1913.

Equitable petition. Before Judge Pendleton. Fulton superior court. June 6, 1912.

*Moore & Pomeroy*, for United Cigar Stores Company.

*Smith & Hastings*, contra.

HILL, J. McKenzie brought suit against the United Cigar Stores Company on a lease contract between McKenzie as landlord and the Cigar Company as tenant, to recover the sum of $1,200, as part of the rent of a certain storehouse in the City of Atlanta, for the first twelve months. By the terms of the contract the defendant was to pay the plaintiff $400 per month for a period of five years, "paying the yearly rent of $4,800 payable in equal monthly $400 payments in advance on the first day of each and every month during the term," with the privilege of canceling the lease at the expiration of the first twelve months. The contract contained the following clause: "Lessor allows a rebate of $100.00 per month for the first year under this contract, same to cover such improvements or to be otherwise applied as lessee may desire, and same is to be deducted from the monthly rental." The defendant paid the plaintiff $300 per month for the first twelve months, but refused to pay the additional $100 per month, its contention being that the language in the lease contract quoted above gave it the right not to pay the $100 to the plaintiff, but that it could "apply" the same as it saw proper, either to "improvements" on the leased property, or "otherwise" to its own use, at its option. The plaintiff, on the contrary, insists that the true meaning of the contract is that the defendant had the privilege of making improvements on the property to the amount of $100 per month, and, if it should do so, this amount was to be deducted from the monthly rental of $400 a month for the first twelve months, but in no event was the rental to be reduced unless "improvements" were made. The defendant filed general and special demurrers to the petition, and

the plaintiff filed general and special demurrers to the answer. The court overruled both general demurrers, and sustained some and overruled other grounds of the special demurrers both to the petition and the answer. The defendant filed the main bill of exceptions, and the plaintiff sued out a cross-bill of exceptions, each party complaining of the rulings which were adverse to him.

1. We think the whole case turns upon the proper construction to be given the portion of the lease contract quoted above. It was insisted on the part of the plaintiff that the contract meant that the $100 rebate was to be used in "improvements" to the building, or otherwise to be applied to the property in substantially a similar manner as improvements. It was further insisted that the "rebate" was not a mere reduction in the rent, so as to become the property of the lessee, but was an allowance to the defendant for the purpose of improvements to be made by it on the leased premises, and was for no other purpose. The plaintiff asked for an accounting between the parties as to what improvements had been made by the defendant under the contract, and what sum was due the plaintiff after deducting the value of the improvements, if any. On the other hand, it was contended by the defendant that the contract of rental, as shown by the contract itself, was really to be but $300 per month, and that the rebate was an unconditional reduction of the amount of the rent for the first twelve months of the life of the contract, and that no "improvements" were in contemplation of the parties; and also, if it be held that the contract is ambiguous, that the "trade fixtures" which were placed in the store for the purpose of conducting the business in connection with the use of the premises should be taken into consideration in connection with the rebate, and the defendant should be allowed a reduction for whatever sum was expended for trade fixtures, which is alleged to be about $1,200 or over. Great stress is laid by the defendant upon the word "otherwise," as used in the contract. It is argued, that if the word has any meaning at all in connection with this particular contract, it can not mean anything of the same nature and character as "improvements;" that it must mean that the money must be applied in some other way—"to be otherwise applied as lessee may desire,"—and that this language gives the defendant the option to apply the money as it may desire, and that it has "desired" to apply this money to a reduction of the rental, and con-

sequently to its own use. Thus it will be seen that the real question is as to the meaning of the contract and the intention of the parties thereto, and whether its meaning is so doubtful and vague as to make it ambiguous and to call for parol evidence in order to arrive at its true meaning and the intention of the parties at the time of its execution. From an inspection of the contract, it is clear that the clause under consideration is ambiguous, and that parol evidence is admissible to explain the real intention of the parties, so that the jury, on the trial, may determine the facts from the evidence. In this view, the court did not err in overruling the demurrer to the petition.

2. In its answer to the petition the defendant averred, among other things, that, should there be any ambiguity with reference to the contract (which the defendant denied), "a reasonable and legal construction thereof is to the effect that trade fixtures should be taken into accounting in consideration of the $100 rebate; this defendant says that trade fixtures and other improvements on said property amounted to more than the sum of $1,200." The plaintiff demurred specially to this paragraph of the answer, "in so far as the same alleges that trade fixtures should be taken into accounting, for the reason that the same states a conclusion of the pleader. . . And for the further reason that same is vague and indefinite, in that it does not allege what trade fixtures are referred to and the itemized value thereof, nor does it allege whether said trade fixtures were removed or allowed to remain in the plaintiff's building. Plaintiff also demurs specially to the following words in paragraph 14 of defendant's answer, namely, 'trade fixtures and other improvements,' because the same is vague and indefinite and fails to allege what improvements and the separate and itemized cost thereof." The court sustained these demurrers in so far as they refer to the defendant's allegations as vague and indefinite, but overruled the demurrer to the allegation that its trade fixtures should properly be taken into the accounting. To so much of the court's judgment as sustained the plaintiff's demurrer to the answer as being vague and indefinite, the defendant excepted; and to so much of the order as overruled the plaintiff's demurrer to the defendant's allegation that the trade fixtures should be properly taken into the accounting, the plaintiff excepted. Properly understood, we think the court correctly disposed of this demurrer. The

effect of the court's order was to hold that the defendant could aver that the trade fixtures placed in the leased premises by the lessee were a proper subject of accounting between the parties to the contract, but that the items had not been properly set out and pleaded in the instant case. Having held that the contract is ambiguous, it is for the jury to say, under sufficiently definite pleadings and under the evidence, whether trade fixtures are embraced within the meaning of the words "such improvements," "or to be otherwise applied," etc., as contemplated by the parties to the contract.

It is unnecessary to consider each of the numerous special demurrers separately, some of which were overruled and some sustained by the court. The rulings of the court on the other questions raised by the demurrers were generally in accord with the rulings here made.

*Judgment affirmed on both bills of exceptions. All the Justices concur.*